ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF CHARLESTON | IN THE COURT OF COMMON PLEAS<br>FOR THE NINTH JUDICIAL CIRCUIT |

STATE OF SOUTH CAROLINA )  IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON )  FOR THE NINTH JUDICIAL CIRCUIT
)
NEIL EICHMAN, AS PERSONAL )  Civil Action No.: _____
REPRESENTATIVE OF THE ESTATE OF )
MEGAN R. EICHMAN )
)
        Plaintiff, )  **SUMMONS**
)  (Jury Trial Requested)
v. )
)
AUSTIN RISSANEN, in his individual )
capacity; CHARLESTON COUNTY )
SHERIFF'S OFFICE; and TOWN OF )
JAMES ISLAND, )
)
        Defendants. )

TO THE DEFENDANTS ABOVE-NAMED:

    YOU ARE HEREBY SUMMONED AND REQUIRED to Answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer on the subscribers at their office located at 3 Morris Street, Suite A, Post Office Box 21624, Charleston, South Carolina 29413, within thirty days of the service, exclusive of the day of such service; and if you fail to answer the Complaint within this time, the Plaintiff will move for entry of Default Judgment and apply to the Court for the relief sought therein.

October 16, 2020
Charleston, South Carolina

**McLEOD LAW GROUP, LLC**

BY: s/ Colin V. Ram
W. Mullins McLeod, Jr., Bar No. 14148
Colin V. Ram, Bar No. 103260
P.O. Box 21624
Charleston, SC 29413
843-277-6655

**STAVRINAKIS LAW FIRM, LLC**

Leon Stavrinakis, Bar No. 65307
One Cool Blow Street, Suite 201
Charleston, SC 29403
843-724-1060

*Attorneys for Plaintiffs*

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF CHARLESTON | IN THE COURT OF COMMON PLEAS<br>FOR THE NINTH JUDICIAL CIRCUIT |
| NEIL EICHMAN, AS PERSONAL<br>REPRESENTATIVE OF THE ESTATE OF<br>MEGAN R. EICHMAN | Civil Action No.: _____ |
| Plaintiff, | **COMPLAINT**<br>(Jury Trial Requested) |
| v. | |
| AUSTIN RISSANEN, in his individual<br>capacity; CHARLESTON COUNTY<br>SHERIFF'S OFFICE; and TOWN OF<br>JAMES ISLAND, | |
| Defendants. | |

Plaintiff Neil Eichman, as Personal Representative of the Estate of Megan R. Eichman, complaining of the above-named Defendants alleges and shows as follows:

## JURISDICTION AND VENUE

1.    Decedent, Megan Eichman, at all times herein, was a citizen and resident of Charleston County, South Carolina.  Plaintiff Neil Eichman is the duly appointed Personal Representative of the Decedent's Estate which is being probated in Charleston County.  Plaintiff's certificate of appointment is attached hereto as Exhibit No. 1.

2.    Plaintiff brings this wrongful death action on behalf of Decedent's parents pursuant to Section 15-51-10 of the South Carolina Code and brings this survival action on behalf of the Decedent's Estate pursuant to Section 15-5-90 of the South Carolina Code.

3.    Upon information and belief, the Charleston County Sheriff's Office is a governmental entity organized and created pursuant to the laws of the State of South Carolina. The Charleston County Sheriff's Office is responsible for the policies, practices and customs of the Charleston County Sheriff's Office as well as the hiring, training, supervising, controlling and

1

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

disciplining of its deputies and other employees. Sheriff James Alton "Al" Cannon, Jr. is the Sheriff of the Charleston County and, upon information and belief, is the primary policymaker for the Charleston County Sheriff's Office.

4.      Upon information and belief, the Town of James Island is a duly authorized municipality created pursuant to the laws of the State of South Carolina.  At all times relevant hereto, the Town of James Island, its agents, servants, and employees operated, maintained and controlled the "Island Sheriff's Patrol," which is a law enforcement unit staffed with deputies from the Charleston County Sheriff's Office that provides policing services to the town.  Upon information and belief, along with the Charleston County Sheriff's Office, the Town of James Island is responsible for the policies, practices, and customs of the Island Sheriff's Patrol as well as the hiring, training, supervising, controlling, and disciplining of its patrol officers and other employees.

5.      Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Austin Rissanen was a Charleston County Sheriff's Office deputy working for the Island Sheriff's Patrol, was employed by and an agent of both the Charleston County Sheriff's Office and Town of James Island, was in police uniform, driving a police vehicle, acting individually, and at all times under the color of state law.

6.      This Court has subject matter jurisdiction over all claims alleged, personal jurisdiction over the parties, and venue is proper in Charleston County.

**FACTUAL BACKGROUND**

7.      On the evening of November 18, 2018, the Sunday before Thanksgiving, Megan Eichman was driving her Nissan Altima southbound on Folly Road (SC 171) on her way to the

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

Stag Erin Pub ("Stag Erin"), a local sports bar and restaurant, to meet up with friends and watch the NFL Sunday Night Football game.

8.      At approximately 9:45 p.m., as she approached the entrance to the Stag Erin, which is located at 1006 Folly Road, Megan moved her vehicle into the middle turn lane on Folly Road and came to a stop in the turn lane with her turn signal activated while she waited for oncoming traffic to pass.

9.      At the same time, Defendant Austin Rissanen was driving a 2016 Chevy Tahoe SUV along Folly Road in the opposite direction at over 100 miles per hour.   The roadway was wet.

10.      Defendant Rissanen was working at the time in an official law enforcement capacity and driving the vehicle for the Town of James Island's "Island Sheriff's Patrol" and the Charleston County Sheriff's Office.

11.      The Chevy Tahoe SUV driven by Rissanen was an unmarked police vehicle operated and maintained by the Charleston County Sheriff's Office and utilized by the Island Sheriff's Patrol.  It had no dash cam or any external markings indicating that it was a law enforcement vehicle.

12.      Although Defendant Rissanen was driving the Chevy Tahoe along Folly Road at speeds in excess of 100 miles per hour, on information and belief he was not dispatched to respond to any location or emergency, nor was he responding to any request for assistance.

13.      Further, on information and belief, Defendant Rissanen was not operating his blue emergency lights, nor was his siren activated continuously as he drove rapidly along Folly Road.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

14.     Despite being issued a police body worn camera, and despite his body worn camera being turned on at the time he began driving down Folly Road, Defendant Rissanen deliberately turned off his body worn camera after he began speeding along on Folly Road.

15.     Neither Rissanen nor his passenger, a state constable, were wearing their seat belts as they were required to do under South Carolina law.

16.     As Defendant Rissanen continued northbound on Folly Road, his speed reached at least 103 miles per hour.

17.     Given the speed of Defendant Rissanen's vehicle and darkness at that time of night, it was virtually impossible for any oncoming traffic to determine the relative speed and closing distance of Rissanen's vehicle.

18.     Indeed, on information and belief, Megan began a left turn from the center turning lane on Folly Road into the parking lot to the Stag Erin believing the roadway to be clear and safe for travel.

19.     Yet, on information and belief, despite Defendant Rissanen seeing Megan's vehicle waiting in the turn lane and despite knowing that he was driving on a wet road, he continued driving at over 100 miles per hour toward her.

20.     As Megan was mid-way through her left turn into the parking lot, she was broad-sided by Defendant Rissanen's SUV.  Her vehicle spun around violently, was pushed down the road, and flipped over before coming to a stop near a telephone pole.

21.     Megan sustained catastrophic injuries as a result of the collision and died shortly afterwards.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

22.    A witness who observed the two vehicles sliding to their final resting spot confirmed that she did not hear a siren or see any emergency blue lights illuminated on Defendant Rissanen's vehicle.

23.    According to electronic vehicle data recovered from Defendant Rissanen's SUV, just five seconds before the fatal impact, Rissanen was driving at 103 miles per hour—which is 58 miles per hour over the posted speed limit.  At this point in time, the electronic vehicle data also showed that Defendant Rissanen's accelerator pedal position was at only 35% of its full position, while the SUV's engine throttle was open at only 39% of its full throttle position despite the vehicle travelling at 103 mph—indicating that Rissanen was driving faster than 103 mph prior to five seconds before impact.

24.    In contrast, the South Carolina MAIT team estimated that Megan's vehicle was moving at a standard speed of 17 mph as she was making the left turn from Folly Road into the parking lot.

25.    Additionally, an eyewitness who was driving behind Megan prior to the collision described her car as "just another vehicle in traffic travelling down the road," that "nothing stood out" about it, that it was "not a vehicle that [] is dangerous," and that she was driving "normally" at the time.  This witness also did not hear any emergency siren from Rissanen's vehicle.

26.    At the point of his high-speed impact with Megan's car, Rissanen was approximately one quarter of a mile away from the intersection of Camp Road and Folly Road where traffic departing the Charleston Holiday Festival of Lights was turning onto Folly Road.  Had Rissanen not collided into Megan's car, he likely would have crashed into another vehicle passing through this intersection and killed another person or a family.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

27.    The South Carolina Highway Patrol investigation concluded that had Defendant Rissanen been driving the posted speed limit on Folly Road, "the collision would not have occurred."

### FOR A FIRST CAUSE OF ACTION
**(Negligence Against All Defendants)**

28.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

29.    At all times relevant hereto, Defendant Rissanen was jointly employed as a law enforcement officer by, and served as a joint agent of, the Charleston County Sheriff's Office and Town of James Island and was acting within the course and scope of his employment.

30.    Upon information and belief, Defendant Rissanen owed statutory and common law duties to the public in general, and to Megan Eichman in particular, to use due care in fulfilling his law enforcement functions and duties and to ensure his conduct conformed to the laws of the State of South Carolina and generally accepted police standards.

31.    The collision and resulting death of Megan Eichman was caused directly and proximately by the following negligent, grossly negligent, reckless, willful, wanton, and unlawful acts and/or omissions of Defendants, by and through Defendant Austin Rissanen, in any one or more of the following respects:

    a.    Failing to operate the police vehicle in a lawful manner;

    b.    Failing to keep a proper lookout while operating the police vehicle;

    c.    Failing to maintain control of the police vehicle;

    d.    Failing to maintain a proper speed of the police vehicle;

    e.    Exceeding the maximum posted speed limit on that portion of Folly Road so as to endanger life and property in violation of S.C. Code § 56-5-760;

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

f.   Failing to use due care;

g.   Failing to properly observe the road and traffic conditions;

h.   Failing to obey traffic laws and/or traffic devices and signs;

i.   Failing to properly use the police vehicle's emergency lights or emergency siren;

j.   Failing to yield the right of way;

k.   Driving while distracted;

l.   Failing to keep a safe distance from Decedent;

m.   Failing to use his vehicle's horn;

n.   Failing to apply his brakes or use his steering mechanism to avoid colliding with Megan Eichman's vehicle;

o.   Operating the police vehicle in utter disregard for the safety of others on the road, including Megan Eichman;

p.   And other such particulars as may be shown at trial.

32.   All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, as well as these Defendants' obligations and duties to public in general and Megan Eichman in particular.

33.   As a direct, foreseeable and proximate result of the aforementioned negligent, grossly negligent, reckless, willful and wanton acts and/or omissions by Defendants, Megan Eichman was injured in the collision and suffered conscious physical harm and endured pain and suffering, including mental distress, emotional anguish and death.

34.   Due to the willful, wanton, reckless, grossly negligent, and negligent acts and/or omissions of Defendants as set out above, Plaintiff is entitled to recover actual and punitive damages from Defendants as determined by a jury.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

**FOR A SECOND CAUSE OF ACTION**
**(Negligent Hiring, Supervision and/or Retention**
**Against the Charleston County Sheriff's Office and Town of James Island)**

35.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

36.     Upon information and belief, the Town of James Island and Charleston County Sheriff's Office owed statutory and common law duties to the public at large, and to Megan Eichman in particular, to refrain from negligently hiring, supervising and/or retaining employees.

37.     Upon information and belief, these Defendants knew or reasonably should have known that Defendant Rissanen did not have the proper training, disposition, and/or temperament to operate an emergency police vehicle safely or meet departmental standards to the detriment of the public.

38.     In particular, on information and belief, these Defendants knew that Defendant Rissanen had a prior history of driving recklessly, including crashing into a stop sign while driving an emergency police vehicle as an officer with the Summerville Police Department prior to his hiring and employment with the Charleston County Sheriff's Office and Town of James Island.

39.     Upon information and belief, and based upon Defendant Rissanen's prior work accident history, Defendants Charleston County Sheriff's Office and Town of James Island knew or should have known that hiring and retaining him as a law enforcement officer presented a danger to the public at large, and to Decedent in particular, and that it was foreseeable that he would fail to perform his driving responsibilities in a reasonable manner that was consistent with South Carolina law as well as generally accepted law enforcement procedure and protocol.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

40.    In addition to hiring and retaining Defendant Rissanen, these Defendants knew or should have known that their failure to provide adequate training to and supervision of him on proper police vehicle driving and safety would result in serious injury and/or death.

41.    In the hiring, retention, and supervision of Defendant Rissanen as a law enforcement officer, these Defendants failed to use due care and were negligent in the following particulars:

    a.    Hiring Defendant Rissanen as a law enforcement officer when his prior driving history, including driving history while on-duty with the Summerville Police Department, documented his inability to safely operate an emergency vehicle in accordance with the laws of the State of South Carolina;

    b.    Failing to properly train Defendant Rissanen on the proper and safe operation of police vehicles;

    c.    Failing to properly train Defendant Rissanen on the proper use of emergency lights and sirens;

    d.    Failing to adequately supervise Defendant Rissanen as he worked the Island Sheriff's Patrol;

    e.    Any and all other particulars as may be shown at trial.

42.    As a direct, foreseeable and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of these Defendants, Megan Eichman suffered conscious physical harm and injury, and endured pain and suffering, including mental distress, emotional anguish and death.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

43.    Due to the willful, wanton, reckless, grossly negligent, and negligent acts of these Defendants as set forth above, Plaintiff is entitled to recover actual and punitive damages as determined by a jury.

### FOR A THIRD CAUSE OF ACTION
**(42 U.S.C. § 1983 – Violation of Decedent's Fourteenth Amendment Rights By Defendant Rissanen)**

44.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

45.    Defendant Rissanen began his high-speed driving after leaving the Blue Water gas station located at the intersection of Fort Johnson Road.  The distance from the gas station where he began speeding to the site of his collision with Megan's car is approximately one mile.

46.    There were numerous vehicles traveling on the north and southbound lanes of this stretch of Folly Road as Rissanen drove recklessly and illegally along it.

47.    Additionally, this portion of Folly Road is dimly lit at night.

48.    While Rissanen was driving this one-mile distance, he had ample time and opportunity to slow down to a reasonable and safe speed, which he deliberately chose not to do despite seeing Megan's vehicle ahead of him with her turn signal activated and despite knowing he was approaching the busy and controlled intersection at Camp Road.

49.    The acts and omissions of Defendant Rissanen by driving his police vehicle at such an extreme and reckless rate of speed without being dispatched to respond to an emergency or in pursuit of a criminal suspect, constitutes a conscious-shocking and/or deliberate indifference to the lives and safety of those on the road around him, including Megan Eichman, in violation of Megan Eichman's Fourteenth Amendment rights.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

50.    Yet, even if Defendant Rissanen had been dispatched to respond to an emergency or was in pursuit of a fleeing dangerous criminal, his extreme and reckless driving at close to 60 miles per hour over the posted speed limit would still constitute deliberate indifference to the lives and safety of those on the road around him, including Megan Eichman.

51.    Indeed, any reasonable law enforcement officer would have known the reckless driving and speeds engaged in by Defendant Rissanen were not only unlawful, but created a substantial risk of serious harm and death to those around him.

52.    By the acts and omissions described above, Defendant Rissanen deprived Megan Eichman of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the U.S. Constitution.

   a.    The right to be free from deprivation of life, liberty, and property without due process of law as secured by the Fourteenth Amendment; and

   b.    The right to be free from unlawful, reckless, deliberately indifferent, and conscious-shocking conduct as secured by the Fourteenth Amendment.

53.    As a direct result of the conscious shocking and/or deliberately indifferent conduct to life by Defendant Rissanen, Megan Eichman was killed and her vehicle destroyed.

54.    As a direct and proximate result of Defendant Rissanen's violation of Megan Eichman's constitutionally protected rights, Plaintiff is entitled to recover actual and punitive damages from him as determined by a jury.

### FOR A FOURTH CAUSE OF ACTION
**(42 U.S.C. § 1983 – Municipal Liability Against Charleston County Sheriff's Office and Town of James Island for Violating Decedent's Constitutional Rights)**

55.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

56.     At all times relevant hereto, Defendants Charleston County Sheriff's Office and Town of James Island acted under the color of state law.

57.     Decedent Megan Eichman was deprived of her right to be free from the deprivation of her life and her property without due process by the Charleston County Sheriff's Office and Town of James Island.

58.     Sheriff Al Cannon, as the elected head of the Charleston County Sheriff's Office and its chief policymaker, has consistently overseen the violation of the rights of South Carolinians to be free from the deprivation of life and property without due process through a demonstrated custom and/or tolerance of deliberate indifference to, or tacit authorization of, his deputies widespread pattern of reckless and highly-dangerous driving through the streets of Charleston County, particularly when not responding to an emergency.  This custom and/or unofficial policy of tolerating such reckless driving was the moving force behind the deprivation of Megan Eichman's constitutional rights.

59.     The Charleston County Sheriff's Office's policies and procedures, including informal and unwritten guidance to deputies, governs their conduct while participating on the Island Sheriff's Patrol.  On information and belief, at all times relevant the Town of James Island had actual knowledge of the Charleston County Sheriff's Office's policies and practices and expressly agreed that these policies would govern the conduct of deputies working the Island Sheriff's Patrol.  In doing so, the Town of James Island shared, ratified, and adopted these policies and practices as their own to govern deputies' conduct on the Island Sheriff's Patrol.

60.     On information and belief, Charleston County Sheriff's deputies have repeatedly caused serious injury and/or death to motorists driving on local roads through high-speed and

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

reckless driving incidents and/or failure to yield to other motorists when not dispatched to emergencies in the years prior to the death of Megan Eichman.

61.     Despite the frequency of serious injuries and death resulting from this reckless and dangerous driving, on information and belief Sheriff Al Cannon and the Charleston County Sheriff's Office had actual knowledge of these incidents but took no action to curb or stop them from occurring in the future.

62.     Prior to Megan Eichman's death, on information and belief, the Charleston County Sheriff's Office and Town of James Island were aware of these widespread and ongoing constitutional violations by deputies engaged in reckless driving in police vehicles but allowed it to continue unabated.   These Defendants' failure to supervise and discipline deputies allowed a pattern and/or practice of unconstitutional actions to develop, effectively sanctioning and condoning this unlawful behavior.

63.     The frequency and duration of reckless driving by Charleston County Sheriff's deputies demonstrates this misconduct was pervasive at all times relevant to this case and, on information and belief, the misconduct was committed with the knowledge of Sheriff Al Cannon, the Charleston County Sheriff's Office, and the Town of James Island or due to their deliberate indifference to it.

64.     Even in the wake of the killing of Megan Eichman by Defendant Rissanen, Charleston County Sheriff's deputies continued to seriously injure and/or kill local residents through reckless and highly dangerous driving of their police-issued vehicles.  The following examples, pled on information and belief, demonstrate the continued unconstitutional pattern and practice.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

a.   On April 24, 2019, just six months after Megan's death, a Charleston County Sheriff's deputy driving southbound on Savannah Highway at a high rate of speed at night collided with a motorist driving eastbound on Dobbin Road.  A passenger in the motorist's vehicle suffered serious injuries as a result of the deputy's reckless speeding.

b.   April 13, 2020, a Charleston County Sheriff's deputy was driving in the far right lane on Highway 17 when he made a sudden illegal U-turn across the center lane of traffic and collided with another motorist, causing his death.  The deputy reportedly was not operating his emergency lights or equipment prior to initiating his turn or at the time of the collision.

c.   On April 19, 2020, a Charleston County Sheriff's deputy collided into a vehicle driven by a North Charleston Police Department officer near the intersection of Rivers Avenue and Cherokee Street, sending that officer to the hospital.

d.   May 21, 2020, a Charleston County Sheriff's deputy was driving northbound on Old Towne Road while another driver traveling in the southbound lane attempted to make a left-hand turn.  The deputy failed to yield and collided with the motorist causing serious physical injuries and death.

65.   Despite this ongoing pattern of extremely reckless and dangerous driving by deputies operating police vehicles and causing serious injury or death to civilian motorists, on information and belief Defendants took virtually no action to deter such conduct by their deputies.

66.   Defendants Charleston County Sheriff's Office and Town of James Island acted with reckless indifference to Megan Eichman's life in that, as a matter of policy or custom, they had knowledge of widespread reckless and illegal driving by Charleston County Sheriff's deputies

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

but failed to adequately discipline, train, investigate, supervise or otherwise direct deputies serving on the Island Sheriff's Patrol, and Defendant Rissanen in particular, to prevent future reckless driving due to their deliberate indifference to the lives of civilians driving on the road.

67.     Further, on information and belief, the Town of James Island knew or should have known of this widespread reckless driving by Charleston County Sheriff's deputies but took no action whatsoever to deter deputies operating on the Island Sheriff's Patrol from engaging in it.

68.     As an example, despite Defendant Rissanen driving approximately 60 miles per hour *over the posted speed limit* in the moment before he crashed into Megan's car and killed her, on information and belief he received no discipline from the Town of James Island or the Charleston County Sheriff's Office other than a $25 citation for failing to wear his seatbelt. By failing to hold him accountable for his dangerous driving, Sheriff Al Cannon and the Town of James Island reaffirmed to deputies this long-standing, unwritten policy that reckless driving causing serious injury or death of local residents is tolerable and will result in no serious punishment or adverse action against deputies.

69.     Defendants, as a matter of custom, caused, encouraged, condoned, and allowed officers to engage in unlawful and reckless conduct without fear of consequence of their actions, thereby making it reasonably probable that, sooner or later, a deputy would recklessly injure or kill a civilian motorist and serving as the moving force behind Defendant Rissanen's reckless and dangerous collision with Megan Eichman.

70.     As a direct result of Defendants' deliberate indifference to these constitutional violations, Defendant Rissanen had no fear of internal consequences for driving recklessly and at an excessive rate of speed down Folly Road in violation Megan Eichman's constitutional rights,

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

and Defendant Rissanen violated Megan Eichman's Fourteenth Amendment right to be free from deprivation of her life and property without due process.

71.    As a result of Defendants' deliberate indifference to the violation of Megan Eichman's constitutional rights, she was seriously injured and killed by Defendant Rissanen.

72.    As a result of Defendants' deliberate indifference to the violation of Megan Eichman's constitutional rights, Plaintiff is entitled to recover actual and punitive damages from Defendants as determined by a jury.

## FOR A FIFTH CAUSE OF ACTION
### (Survival Action Against All Defendants)

73.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

74.    As a result of the above referenced acts and/or omissions, Decedent Megan Eichman sustained serious physical injuries ultimately causing her wrongful death.

75.    Pursuant to the South Carolina Survival Act, Plaintiff is entitled to bring all of the above-referenced and foregoing causes of action as the duly appointed Personal Representative of the Estate of Megan R. Eichman.

76.    Plaintiff alleges that as a result of the above referenced acts, Megan Eichman suffered conscious pain and suffering, personal injuries and trauma prior to her death, funeral expenses, and other compensatory damages, and is entitled to punitive damages in an amount to be determined by a jury.

77.    All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, and Defendants' obligations and duties to Plaintiff.

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

78.    Each of these acts and/or omissions and/or commissions proximately caused Megan Eichman's injuries and wrongful death.

79.    Consequently, Plaintiff seeks actual and punitive damages and such other and further relief this Honorable Court deems just and proper.

## FOR AN SIXTH CAUSE OF ACTION
### (Wrongful Death Against All Defendants)

80.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

81.    As a result of the above-referenced acts and/or omissions, Decedent Megan Eichman suffered conscious pain and suffering, personal injuries and trauma prior to her death.

82.    Pursuant to the South Carolina Wrongful Death Act, Plaintiff alleges entitlement to all of the above-referenced and foregoing causes of action as survivors and/or as the duly appointed Personal Representative of the Estate of Megan R. Eichman.

83.    As a direct and proximate result of Defendants' willful, wanton, reckless, grossly negligent and negligent acts as set out above, the Decedent's beneficiaries, as represented by Neil Eichman, Personal Representative of the Estate of Megan R. Eichman, have suffered injuries, which have caused, and in the future will cause, the beneficiaries to suffer one or more of the following elements of damage as to the survival and wrongful death claims:

a.    Pecuniary loss;

b.    Conscious pain and suffering;

c.    Mental shock and suffering;

d.    Wounded feelings;

e.    Grief and sorrow;

f.    Loss of companionship; and

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

g.  Deprivation of use and comfort of Megan Eichman's society, including loss of her experience, knowledge, and judgment in managing the affairs of herself and her beneficiaries.

84.  Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Defendants as set out above, as well as Defendant Rissanen's violation of state law, Plaintiff is entitled to compensation for funeral expenses and other compensatory damages and is entitled to punitive damages in an amount to be determined by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a trial by jury and for the following:

i.  Judgment against Defendants, individually and joint and severally;

ii.  For actual damages, special damages, consequential damages, and treble damages in an amount to be determined by the jury;

iii.  For punitive damages, to be assessed individually and joint and severally, in an amount to be determined by the jury;

iv.  For costs of this action and reasonable attorney's fees;

v.  And for all such other and further relief this Honorable Court deems just and proper.


Respectfully submitted,

**McLEOD LAW GROUP, LLC**

BY: s/ Colin V. Ram
W. Mullins McLeod, Jr., Bar No. 14148
Colin V. Ram, Bar No. 103260
P.O. Box 21624
Charleston, SC 29413
843-277-6655

**STAVRINAKIS LAW FIRM, LLC**

Leon Stavrinakis, Bar No. 65307
One Cool Blow Street, Suite 201
Charleston, SC 29403
843-724-1060


Dated: October 16, 2020
Charleston, South Carolina

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

# EXHIBIT 1

ELECTRONICALLY FILED - 2020 Oct 16 2:47 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1004561

STATE OF SOUTH CAROLINA )
COUNTY OF <u>CHARLESTON</u> )
)
)
IN THE MATTER OF: )
<u>MEGAN R.  EICHMAN</u>                                         )
(Decedent) ) CASE NUMBER:   <u>2019ES1000302</u>

IN THE PROBATE COURT

**CERTIFICATE OF APPOINTMENT**

**This is to certify that**

<u>NEIL EICHMAN</u>

is/are the duly qualified

☒ PERSONAL REPRESENTATIVE
☐ SUCCESSOR PERSONAL REPRESENTATIVE
☐ SPECIAL ADMINISTRATOR

In the above matter and that this appointment, having been executed on the <u>20th</u>
day of <u>February</u>, <u>2019</u> is now in full force and effect.

**RESTRICTIONS:**
<u>NONE</u>

Executed this   <u>20th</u>   day of <u>February</u>  ,  <u>2019</u>  .

_____
IRVIN G. CONDON, JUDGE OF PROBATE
BY ESTATE CLERK

**Do not accept a copy of this certificate without
the raised seal of the Probate Court.**

FORM #141ES (1/2014)
62-1-305, 62-3-103