**IN THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| NEIL EICHMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MEGAN R. EICHMAN ) ) ) | Civil Action No.: 2:20-04057-BHH |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S MEMORANDUM IN** |
| ) | **OPPOSITION TO DEFENDANT** |
| v. ) | **TOWN OF JAMES ISLAND'S** |
| ) | **MOTION FOR SUMMARY** |
| AUSTIN RISSANEN, in his individual ) | **JUDGMENT** |
| capacity; CHARLESTON COUNTY ) | |
| SHERIFF'S OFFICE; and TOWN OF ) | |
| JAMES ISLAND, ) | |
| ) | |
| Defendants. ) | |

Plaintiff Neil Eichman, as Personal Representative of the Estate of Megan R. Eichman, respectfully submits his Response in Opposition to the motion for summary judgment filed by Defendant Town of James Island, (ECF No. 85). For the reasons set forth below, Defendant's motion for summary judgment should be denied and the claims against him should proceed to trial.

## RELEVANT FACTUAL BACKGROUND

In opposing Defendant Town of James Island's motion for summary judgment, Plaintiff incorporates by reference the full factual background set forth in his memoranda in opposition to Defendant Rissanen and Defendant CCSO's motions for summary judgment, including significant disputes of material fact. Additionally, Plaintiff highlights the following evidence that bears specifically on the legal arguments raised in Defendant Town of James Island's motion.

### I. Island Sheriff's Patrol

The Town of James Island ("Town") describes its hiring of off-duty Charleston County Sheriff's Office deputies as the Island Sheriff's Patrol. The Town characterizes this relationship as an ongoing contractual relationship, yet the Town cannot dispute the following facts:

1

- The Town has no documentation of any written contracts with the CCSO other than for fiscal years 2015-16 and 2018-19. (*See* ECF No. 85-4.)

- No written contract between the Town and CCSO for the use of off-duty CCSO deputies in 2018 existed as of November 18, 2018—the date Ms. Eichman was killed.

- The written contract between the Town purporting to begin on July 1, 2018 and included as Exhibit 4 to the Town's motion for summary judgment was not executed until weeks after Megan Eichman's death. (*See* ECF No. 85-4 at 3.)

- The execution of the 2018 written contract in December 2018 was prompted by an email from CCSO after Ms. Eichman's death asking for a copy of a contract. (Ex. 1 at 2 ("With the incident that occurred involving our off duty deputies, I was asked for a copy of the contract.").

- Town of James Island Mayor Bill Woolsey testified that in December 2018, "The sheriff's office wanted a contract for 2018, and that they had not had the town sign one and that they wanted to have one signed." (Ex. 2, Woolsey Tr. 65:20-66:4.)

- The terms of the written contract between the Town and CCSO purporting to begin on July 1, 2018 had not been finalized until December 2018. (*See* Ex.1 at 1 ("We do need to make one revision before we execute"); *see also* Ex. 3, Avila Tr. 81:2 – 82:1.)

- The Town does not pay CCSO "to provide a greater number of CCSO deputies to provide [law enforcement services] above and beyond what CCSO would normally provide." (ECF No. 85 at 9.). Rather, the Town pays deputies directly.

- Under the written contract purportedly in effect on November 18, 2018, the Town agreed to provide individuals working on the Island Sheriff's Patrol with worker's compensation benefits. (*See* ECF No. 85-4 at 2-3 ("Workers Compensation Insurance Provided by Employer: Yes.").)

- The written contract expressly states that the Town of James Island is the "Employer." *See* ECF No. 85-4 at 2.)

- The written contract expressly refers to the "employment" of off-duty deputies by the Town. *See* ECF No. 85-4 at 2-3.

- Defendant Rissanen was on the Town payroll in November 2018. (Ex. 4, payroll records).

- Town payroll records show it directly paid Defendant Rissanen for his work on the Island Sheriff's Patrol on November 18, 2018, including for his time before, during, and after his collision with Ms. Eichman. (Ex. 4, payroll records).

- Rissanen testified to completing a IRS Form W-4 (employee's withholding certificate) for the Town. (*see* ECF No. 86, Ex. 3, Rissanen Tr. 104:23 – 106:3.)

- Rissanen testified to receiving an IRS Form W-2 (wage and tax statement) from the Town for his off-duty work. (*see* ECF No. 86, Ex. 3, Rissanen Tr. 125:14-25.)

## **LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). The burden is on the moving party in the first instance to inform "the district court of the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Id.*

## **ARGUMENT**

### I. **Rissanen Was A Town Employee At the Time of the Collision**

The Town argues that it cannot be legally liable for Rissanen's actions on the purported basis that he was not their employee at the time of the November 18, 2018 collision. *See* ECF No. 85 at 19 ("Dep. Rissanen was not the Town's employee, but an independent contractor of the Town."). Yet, the facts outlined above clearly contradict this assertion. First, Rissanen was on the Town of James Island payroll and his name is listed on Town payroll records. Second, Rissanen was paid directly by the Town for his work on November 18, 2018—he was not paid for

this work through the CCSO. Third, the written contract between the Town and CCSO unambiguously describes the Town as the "Employer" of those working the patrol. Fourth, Rissanen testified to submitting a Form W-4 withholding certificate and receiving a Form W-2 wage statement in connection with his off-duty work for the Town. This testimony is evidence that he was an *employee* not an *independent contractor*. *See Farlow v. Wachovia Bank of N. Carolina*, N.A., 259 F.3d 309, 312 n.5 (4th Cir. 2001) ("Form 1099 is used for reporting the income of non-employees, and the W–2 form is used for reporting the income of employees.").

Fifth, the Town provided Worker's Compensation insurance to off-duty deputies working for its Island Sheriff's Patrol. (ECF No. 85-4 at 2; Ex. 2, Woolsey Tr. 57:21 – 58:08.) Under South Carolina law, worker's compensation insurance is available only to employees, not independent contractors. *See McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 469, 313 S.E.2d 38, 39 (Ct. App. 1984) ("No award under the Workers' Compensation Law is authorized unless the employer-employee or master-servant relationship existed at the time of the alleged injury for which [a] claim is made."). Thus, the fact that the Town provided worker's compensation insurance to individuals working the Island Sheriff's Patrol in 2018 is evidence of an "employer-employee or master-servant relationship." Sixth, the Town has offered no evidence of any contract between it and Rissanen.

Although the Town claims "[t]he only thing that the Town did was to fund the Island Sheriff's Patrol . . . ," that is an incomplete statement. CCSO Lt. Avila, who oversaw its relationship with the Town, testified that it was the *Town* not the Sheriff's Office that paid the deputies for their off-duty work on the Island Sheriff's Patrol. (Ex. 3, Avila Tr. 41:23-42:13.) Not only did the Town pay the deputies, but Town Mayor Woolsey testified that the Town "provide[d] direction" to CCSO as to "what should be the priorities of the Island Sheriff's Patrol." (Ex. 2,

4

Woolsey Tr. 57:15-20.) Mayor Woolsey also testified that the Town had no obligation to continue the program and that it could "pull the plug on the entire program" immediately. (*Id.* 81:17 – 82:20.) This "direction" regarding the "priorities" of the Island Sheriff's Patrol is evidence of its control over the deputies.

## II.     Plaintiff's Evidence Establishes Negligent Hiring, Supervision, and Retention

Plaintiff brought negligent hiring, supervision, and retention causes of action against the Town alleging it failed to use due care when hiring Defendant Rissanen for the Island Sheriff's Patrol due to his prior history of crashing a law enforcement vehicle when responding Code 3.

An employer can be independently liable in tort for its own negligent acts. *James v. Kelly Trucking Co.,* 377 S.C. 628, 632, 661 S.E.2d 329, 330 (2008). In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public." *Id.* In addition, an employer can be held liable when under a duty to exercise reasonable care to control an employee acting outside the scope of his employment. *Degenhart v. Knights of Columbus*, 309 S.C. 114, 116-17, 420 S.E.2d 495, 496-97 (1992). An employer may be liable for negligent supervision even when an employee intentionally harms another when he: "(i) is upon the premises in possession of the employer or upon which the employee is privileged to enter only as his employee, or (ii) is using a chattel of the employer and the employer knows or has reason to know that he has the ability to control his employee and know or should know of necessity and opportunity for exercising such control." *Id.* The *Degenhart* court also recognized that "[a]n employer may have a legal duty arising out of a contract . . . when an employer, by entering into a contract with an employee, places himself in

such a relation with the plaintiff that the law imposes upon the employer an obligation, sounding in tort . . . to act in such a way that the plaintiff will not be injured." *Id.*

The negligent hiring of Defendant Rissanen by the Town of James Island is evident from his prior history of crashing his vehicle. Town Mayor Woolsey testified, however, that the Town conducted no screening or background checks for personnel on the Island Sheriff's Patrol. (Ex. 2, Woolsey Tr. 79:22 – 81:16.) It never informed CCSO, for example, "we don't want anybody who has had any prior traffic collisions working the Island Sheriff's Patrol." (*Id.*). In fact, it never provided any criteria to CCSO as to the quality of personnel who would staff the patrol. (*Id.*) Nor did it provide personnel with any supervision, training or direction. (*Id.* Tr. 95:1-6.) Law enforcement expert Roy Taylor testified to the need to provide additional training when hiring a deputy with an infraction history. (*See* ECF No. 86, Ex. 21, Taylor Tr. 189:10-25.) On these facts, a jury could reasonably find that CCSO was negligent in hiring Rissanen.

Further, the Town's argument that Plaintiff's claims against it are not cognizable because "Rissanen was not under the control of the Town" ignores the substantial evidence that Rissanen, was in fact an at-will employee of the Town, on its payroll, and the Town could "pull[ed] the plug" on his employment at any time. (Ex. 2, Woolsey Tr. 81:17 – 82:20.)

### III.    The Immunities Under the Tort Claims Act Do Not Shield the Town From Liability

First, the Town's assertion of immunity under the exception for negligence claims involving the method of providing police protection cannot be resolved on summary judgment. As discussed in Plaintiff's memoranda in opposition to Defendant Rissanen and Defendant CCSO's motions for summary judgment, there is a material dispute of fact whether Rissanen was providing police protection to anyone at the time he collided with Ms. Eichman. He was off-duty, he never informed any on-duty supervisor or dispatcher that he was responding in a law enforcement capacity, and there is a question of fact regarding his reason and intent in driving 103

mph on Folly Road such that it cannot necessarily be credited as law enforcement. There is a also a question of fact whether driving 103 mph in a 40 mph can be construed as a "method of providing police protection." Additionally, the Tort Claims Act does not provide blanket immunity to law enforcement. Rather, the Act specifically carves out liability for officer's conduct falling outside of their official duties as well as acts constituting intent to harm (which driving 103 mph on Folly Road at night reflects). *See* S.C. Code Ann. § 15-78-70(a)-(b).

Second, the Town's assertion of immunity for a loss resulting from compliance with any law is misplaced. Plaintiff is not alleging negligence simply based upon Rissanen's violating a 40 mph speed limit; rather, his negligence is based upon Rissanen's failure to follow generally accepted law enforcement practices. Indeed, Rissanen's reckless driving would be negligent even in the absence of any posted speed limit. Negligence in this instance does not simply arise out of non-compliance with any law, but from his failure to follow generally accepted law enforcement standards. *See Clark v. S.C. Dep't of Pub. Safety*, 353 S.C. 291, 307–08, 578 S.E.2d 16, 24 (Ct. App. 2002), aff'd, 362 S.C. 377, 608 S.E.2d 573 (2005).

Third, the Town's assertion of immunity for discretionary acts also fails at this stage. Discretionary immunity is a fact-based inquiry. To establish discretionary immunity, the Town must prove that its *employee* "faced with alternatives, actually weighed competing considerations and made a conscious choice." *Clark*, 353 S.C. at 304 (quoting *Pike v. South Carolina Dep't of Transp.*, 343 S.C. 224, 230, 540 S.E.2d 87, 90 (2000). "Furthermore, 'the governmental entity must show that in weighing the competing considerations and alternatives, it utilized accepted professional standards appropriate to resolve the issue before them. This standard is inherently factual." *Id.* (citations omitted).

The *Clark* case is instructive. It involved a similar factual scenario involving a high-speed police pursuit in which the Plaintiff's decedent was killed. The S.C. Court of Appeals rejected this defense, however, finding the trial court properly denied summary judgment on discretionary immunity after finding a factual dispute over whether the officer's pursuit driving complied with generally accepted law enforcement standards.

> Clark presented the testimony of his expert in high-speed chases, Samuel Killman, that the Department's employees did not properly balance the competing considerations of capturing a fleeing suspect versus maintaining the public's safety and that they disregarded appropriate standards in failing to terminate the pursuit. The Department attempted to rebut this evidence with Bradley's testimony that he did weigh these competing concerns. This created a question of fact that could not be resolved by the trial court.

*Id.* at 305.

In this case, there is a similar factual dispute whether Rissanen properly balanced the competing considerations of responding to a purported emergency versus maintaining the public's safety. As Assistant Sheriff Lucas testified, the safety of the public is always paramount, including over the life of another officer. (ECF No. 86, Ex. 7.) Plaintiff's emergency driving expert Dr. Geoff Alpert similarly criticized Rissanen for his failure to follow and properly balance emergency driving standards. (ECF No. 86, Exs. 10, 17.) Thus, as in *Clark*, there is a dispute of fact on this issue that must be resolved by a jury.

Further, the *Clark* court questioned whether the discretionary immunity even applied in the context of a police driving case:

> Moreover, we question whether the discretionary immunity provision is applicable to this case in any event. Some jurisdictions determine whether an act is discretionary by considering if it can best be described as planning or operational. In this case, we believe the function of the Department's employees in carrying out a general pursuit policy is operational in nature and is not the type of discretionary act contemplated in the Tort Claims Act. The fact that the employees had to make decisions or exercise some judgment in their activities is not determinative. To read the exception that broadly would encompass virtually all traffic stops made by the

Department's employees, as they all involve some degree of decision-making, but they are not the type of discretionary act envisioned under the Tort Claims Act.

*Clark*, 353 S.C. at 305–06, 578 S.E.2d at 23 (footnotes omitted). Thus, there is a significant question under state law whether the Town's immunity defense is even applicable to the facts in this case.

**IV.     Plaintiff Consents to Dismissal of *Monell* Claim Against Town of James Island**

Though Plaintiff disputes the Town of James Island's argument that there is no underlying § 1983 violation by Defendant Rissanen or that his conduct must be analyzed under an "intent to harm" standard, upon review of the evidence and applicable law, Plaintiff recognizes there is no genuine issue of material fact regarding a custom, policy or practice by the Town to support his § 1983 *Monell* claim against it.  For this reason, Plaintiff consents to dismissal of his § 1983 claim against Defendant Town of James Island only.

**V.     Plaintiff Is Not Seeking Punitive Damages Against Town of James Island**

Plaintiff recognizes that municipalities in the State of South Carolina are not subject to punitive damages under the South Carolina Tort Claims Act.  Accordingly, Plaintiff does not oppose the relief sought by the Town of James Island related to the availability of punitive damages against it.  Because, however, Plaintiff's complaint raises certain causes of action against "All Defendants," it would be improper to dismiss or strike Plaintiff's claims for punitive damages from those causes of action, as doing so would impermissibly alter Plaintiff's claim for relief against Defendant Rissanen, who as an individual defendant remains subject to punitive damages.

Accordingly, Plaintiff respectfully suggests that an order stating to the effect that "to the extent Plaintiff alleges entitlement to punitive damages against the Town of James Island, such damages are not available against governmental entities in state law claims arising under South

Carolina law" would provide the Town of James Island with the relief it requested while also preserving Plaintiff's damages claims against Defendant Rissanen.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court enter an Order denying Defendant Town of James Island's motion for summary judgment, with the exception of Plaintiff's *Monell* claim and request for punitive damages.

Respectfully submitted,

**McLEOD LAW GROUP, LLC**
Post Office Box 21624
Charleston, South Carolina 29413
(843) 277-6655

*s/ Colin V. Ram*
Colin V. Ram, No. 12958
W. Mullins McLeod, Jr., No. 7142
colin@mcleod-lawgroup.com

*and*

**STAVRINAKIS LAW FIRM**

Leon Stavrinakis
One Cool Blow Street, Suite 201
Charleston, SC 29403

*Attorneys for Plaintiff*

April 28, 2023
Charleston, South Carolina